1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,                No.  1:14-cr-00099-NONE

12              Plaintiff,

13        v.                                  ORDER DENYING DEFENDANT'S
                                              MOTION FOR COMPASSIONATE
14   ROBERT ANGEL ARIAS,                      RELEASE

15              Defendant.                    (Doc. No. 76)

16

17
          Pending before the court is defendant Robert Angel Arias' motion for compassionate
18
     release pursuant to 18 U.S.C. § 3582(c)(1)(A).  The motion is largely based on defendant's
19
     medical condition and the alleged risks posed to him by the ongoing coronavirus ("COVID-19")
20
     outbreak.  (Doc. No. 76.)  For the reasons explained below, defendant's motion will be denied.
21
                                      **BACKGROUND**
22
          Between 1997 and 2013, defendant was convicted of various state felony offenses,
23
     including possessing stolen vehicles, possessing methamphetamine, and unlawful sexual
24
     intercourse with a minor, among others.  (Doc. No. 26 (Presentence Report) at 7–18.)  On
25
     November 17, 2014, defendant Arias entered a plea of guilty in this case to the charge of being a
26
     felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1) as alleged in Count One
27
     of the indictment in this case.  (Doc. Nos. 17, 21.)  It was determined that under the U.S.
28

                                              1

1    Sentencing Guidelines, defendant Arias' adjusted offense level was 21 and his criminal category

2    was VI, resulting in an advisory sentencing guideline range calling for a sentence of between 77

3    and 96 months in the custody of the U.S. Bureau of Prisons (BOP).  (Doc. No. 26 (Presentence

4    Report) at 33.)  The U.S. Probation Office recommended a low-end guideline sentence of 77

5    months.  (*Id.*)  On April 27, 2015, the court departed downward from the guideline range and

6    sentenced defendant to a 48-month term of imprisonment with 36 month term of supervised

7    release to follow.  (Doc. Nos. 35; 36 at 2–3.)

8          Defendant was released after serving his sentence of imprisonment and his term of

9    supervised release commenced on January 24, 2018.  (Doc. No. 39 at 1.)  Between February to

10   March 2018, however, defendant tested positive for using amphetamines and methamphetamines,

11   in violation of one of the conditions of his supervised release.  (*Id.* at 1–2.)  On April 17, 2018, a

12   petition for violation of supervised release was filed against defendant and a warrant was issued

13   for his arrest.  (Doc. Nos. 39, 41.)  After defendant admitted to the charged violation, the court

14   sentenced defendant to an 82-day term of imprisonment (credit for time served), two years of

15   supervised release to follow, and required him to reside at and participate in an 18-month drug

16   rehabilitation program.  (Doc. Nos. 51; 53; 55 at 2–3, 5.)

17         Defendant successfully completed the drug rehabilitation program on January 13, 2020,

18   but about one week later, he again tested positive for methamphetamine use.  (Doc. No. 58 at 2.)

19   On February 12, 2020, a new petition for violation of supervised release was filed against

20   defendant.  (*Id.*)  After defendant admitted the new violation, on June 19, 2020, the court

21   sentenced defendant to 11 months in prison with no term of supervised release to follow.  (Doc.

22   Nos. 66, 74, 75.)

23         Defendant is currently serving his sentence at the Fresno County Jail.  (Doc. No. 76 at 3.)

24   On July 8, 2020—less than a month after the court sentenced defendant to his current term of

25   imprisonment—defendant's appointed counsel filed the pending motion for compassionate

26   release on defendant's behalf pursuant to 18 U.S.C. § 3582(c)(1)(A).  (Doc. No. 76.)  On July 16,

27   2020, the government filed its opposition to the motion, and on July 20, 2020, defendant filed his

28   reply thereto.  (Doc. Nos. 77, 80.)

1
**LEGAL STANDARD**

2
A court generally "may not modify a term of imprisonment once it has been imposed." 18

3
U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of

4
conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not

5
be modified by a district court except in limited circumstances."). Those limited circumstances

6
include compassionate release in extraordinary cases. *See United States v. Holden*, __ F. Supp.

7
3d __, 2020 WL 1673440, at *2 (D. Or. April 6, 2020). Prior to the enactment of the First Step

8
Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18

9
U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring

10
their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A)

11
(2018). In this regard, the FSA specifically provides that a court may

12
> upon motion of the defendant after the defendant has fully exhausted
13
> all administrative rights to appeal a failure of the [BOP] to bring a
> motion on the defendant's behalf[1] or the lapse of 30 days from the
14
> receipt of such a request by the warden of the defendant's facility,
> whichever is earlier, may reduce the term of imprisonment (and may
15
> impose a term of probation or supervised release with or without
> conditions that does not exceed the unserved portion of the original
16
> term of imprisonment), after considering the factors set forth in [18
> U.S.C. §] 3553(a) to the extent that they are applicable, if it finds
17
> that –

18
> (i)      extraordinary and compelling reasons warrant such a
>          reduction; or

19
> (ii)     the defendant is at least 70 years of age, has served at least 30
20
>          years in prison, pursuant to a sentence imposed under section
>          3559(c), for the offense or offenses for which the defendant
21
>          is currently imprisoned, and a determination has been made
>          by the Director of the Bureau of Prisons that the defendant is
22
>          not a danger to the safety of any other person or the
>          community, as provided under section 3142(g);

23

24
[1] If the BOP denies a defendant's request within 30 days of receipt of such a request, the
defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the
25
date the Warden signed the response." 28 C.F.R. § 542.15(a). If the Regional Director denies a
defendant's administrative appeal, the defendant must appeal again to the BOP's "General
26
Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the
General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is
27
resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C.
§ 3582(c)(1)(A).
28

3

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons."  U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[3]; *see also United States v. Gonzalez*, No. 2:18-cr-00232-TOR, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions).  However, a large and growing number of district courts across the country have concluded that because the Sentencing

---

[2]  Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months."  The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention.  The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP.  CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020).  However, the BOP's authority in this regard is limited to "the covered emergency period."  *Id.*  The BOP's authority expires "30 days after the date on which the national emergency declaration terminates."  *Id.* § 12003(a)(2).  After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations."  Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020).  The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release.  *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, LAW360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, LAW360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[3]  The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(2).

Commission has not amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c).  *See, e.g.*, *United States v. Parker*, __ F. Supp.3d __, 2020 WL 2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019).

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted.  *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998).  Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts that have done so have agreed that the burden remains with the defendant.  *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies.  18 U.S.C. § 3582(c)(1)(A).  Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission.  *Id.*  Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable."  *Id.*

*Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-CR-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 2020 WL 2572525, at *4; *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be

1   "consistent with" the sentencing factors set forth in §3553(a)).

2   **A.      Administrative Exhaustion**

3          At the time the original motion was filed, defendant conceded that he had not submitted

4   an administrative request for compassionate release to his institution of confinement.  (Doc. No.

5   76 at 7.)  However, defendant is imprisoned at the Fresno County Jail, not at a BOP facility.  (*Id.*)

6   Many district courts have concluded that exhaustion is satisfied, or alternatively excused, when a

7   defendant seeking compassionate release is not in the custody of the BOP.  *See, e.g.*, *United*

8   *States v. Jepsen*, No. 3:19-cv-00073(VLB), 2020 WL 1640232, at *3 (D. Conn. Apr. 1, 2020)

9   (finding exhaustion satisfied where defendant was not in a BOP facility); *United States v.*

10  *Gonzalez*, 451 F. Supp. 3d 1194, 1196 (E.D. Wash. 2020) (finding that exhaustion of

11  administrative remedies was excused where the defendant was not confined in a BOP facility).

12  Defendant's counsel represents to the court that when he contacted the BOP's regional counsel to

13  inquire regarding the administrative remedies available to defendant, the BOP responded by

14  stating: "Because Mr. Arias is not in BOP custody, BOP cannot evaluate him for compassionate

15  release and will not be seeking a motion for compassionate release on his behalf at this time."

16  (Doc. Nos. 76 at 7; 76-1 at 2.)  The government does not address the issue of exhaustion in its

17  opposition to the pending motion for compassionate release.  (*See passim* Doc. No. 77.)  Because

18  the administrative exhaustion procedures are specific to BOP, *see* 28 C.F.R. § 542.15(a), a

19  defendant in Arias' position "is essentially caught in a 'Catch-22'; neither the warden at [the

20  county jail] nor the BOP will consider his request because of his designation to [the county jail], a

21  non-BOP facility," *Jepsen*, 2020 WL 1640232, at *3.

22         Therefore, given the circumstances posed by defendant Arias' place of confinement, the

23  court concludes that administrative exhaustion is properly excused here because no administrative

24  remedies are available to defendant. The court will therefore address the pending motion on the

25  merits below.

26  **B.      Extraordinary and Compelling Reasons**

27         "Extraordinary and compelling reasons" warranting compassionate release may exist

28  based on a defendant's medical conditions, age and other related factors, family circumstances, or

1  "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D).  Even though the catch-all of "other

2  reasons" was included in the policy statement at a time when only BOP could bring a

3  compassionate release motion, courts have agreed that it may be relied upon by defendants

4  bringing their own motions under the FSA.  *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-236-

5  JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

6      Thus, the medical condition of a defendant may warrant compassionate release where he

7  or she "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life

8  trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a

9  specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1 (A)(i).  Non-exhaustive

10  examples of terminal illnesses that may warrant a compassionate release "include metastatic

11  solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced

12  dementia." *Id.*  In addition to terminal illnesses, a defendant's debilitating physical or mental

13  condition may warrant compassionate release, including when:

14      The defendant is

15      (I)   suffering from a serious physical or medical condition,

16      (II)  suffering from a serious functional or cognitive impairment, or

17      (III) experiencing deteriorating physical or mental health because of
18      the aging process,

19      that substantially diminishes the ability of the defendant to provide
      self-care within the environment of a correctional facility and from
20      which he or she is not expected to recover.

21  *Id.* at cmt. n.1 (A)(ii).  Where a defendant has moderate medical issues that otherwise might not

22  be sufficient to warrant compassionate release under ordinary circumstances, some courts have

23  concluded that the risks posed by COVID-19 tips the scale in favor of release in particular

24  situations.  *See, e.g.*, *United States v. Rodriguez*, No. 2:03-cr-00271-AB, 2020 WL 1627331, at

25  *10–11 (E.D. Pa. Apr. 1, 2020) ("Without the COVID-19 pandemic—an undeniably

26  extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and

27  rehabilitation would not present extraordinary and compelling reasons to reduce his sentence.

28  But taken together, they warrant reducing his sentence.").

1        Compassionate release may also be warranted based on a defendant's age and other

2  related factors.  In these situations, "extraordinary and compelling reasons" exist where a

3  "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or

4  mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of

5  his or her term of imprisonment, whichever is less."  U.S.S.G. § 1B1.13, cmt. n.1(B).[4]  In

6  determining a defendant's projected release date, courts may take into account any "good time

7  credits" awarded to the defendant by BOP for "exemplary" behavior in prison as set forth in 18

8  U.S.C. § 3624(b)(1).  *See, e.g.*, *United States v. Burrill*, No. 17-cr-00491-RS, 2020 WL 1846788,

9  at *1 n.1 (N.D. Cal. Apr. 10, 2020).

10        Here, defendant Arias argues that extraordinary and compelling reasons warranting his

11  compassionate release exist due to medical condition.  Defendant is currently 50 years old.  (*See*

12  Doc. No. 26 (Presentence Report) at 2.)  Thus, to qualify for compassionate release, defendant

13  must demonstrate that he is suffering from some serious medical condition "that substantially

14  diminishes [his] ability . . . to provide self-care" in Fresno County Jail and the medical condition

15  is one "from which he . . . is not expected to recover."  U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii).

16  Defendant cites his asthma and the risks associated with that medical condition posed by

17  COVID-19 as the basis for his release.  (Doc. No. 76 at 10.)  At the time of his original

18  sentencing, the only reported medical issues that defendant suffered from were "physical

19  infirmities," including pain in his lower back and Achilles heel.  (*Id.* at 25.)  Defendant was not

20  reported to have been diagnosed as suffering from asthma at that time.  (*See passim id.*)

21  However, according to defendant's BOP medical records—which are dated from 2017—

22  defendant was (at that time) prescribed an albuterol inhaler and it was noted that he had

23  "unspecified" asthma.  (Doc. No. 76-1 at 5.)  However, there is no indication from the BOP's

24  medical records regarding the severity of defendant's asthma condition.  More specifically, it was

25  not noted in those records whether defendant suffers from mild, moderate, or severe asthma.

26  /////

27

28

---

[4]  However, because defendant Arias is only 50 years old (Doc. No. 26 at 2), his age and age-related factors do not play a role in consideration of his pending motion.

1    According to the U.S. Centers for Disease Control and Prevention, individuals who have

2  "moderate-to-severe" asthma "might be at an increased risk for severe illness from COVID-19."

3  *See Coronavirus Disease 2019 (COVID-19): People Who Are at Increased Risk for Severe*

4  *Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus

5  /2019-ncov/need-extra-precautions/people-at-increased-risk.html (last visited Oct. 7, 2020).  The

6  CDC does not identify mild asthma as an at-risk factor for severe illness if one contracts the

7  COVID-19 virus.  The court is not persuaded that defendant suffers from at least moderate

8  asthma simply because he is required to take four puffs of his inhaler a day while incarcerated at

9  Fresno County Jail, as counsel claims without support from any medical records or other evidence

10  before the court.  (Doc. No. 76 at 11.)  Based on the current record, the court cannot conclude that

11  defendant is at higher risk of becoming severely ill based on any medical condition that he suffers

12  from were he to contract COVID-19.

13    Because of this lack of supporting evidence, defendant Arias has not carried his burden of

14  demonstrating that he suffers from a "serious" medical condition.  *See* U.S.S.G. § 1B1.13, cmt.

15  n.1 (A)(ii); *Greenhut*, 2020 WL 509385, at *1 ("The defendant bears the initial burden to put

16  forward evidence that establishes an entitlement to a sentence reduction.").  Therefore, the court

17  does not find extraordinary and compelling reasons justifying defendant Arias' compassionate

18  release pursuant to § 3582(c)(1)(A).

19  **C.    Consistency With the § 3553(a) Factors**

20    Because the pending motion fails to establish extraordinary and compelling reasons

21  justifying compassionate release in this case, the court need not address whether any reduction in

22  defendant's sentence would be consistent with consideration of the sentencing factors set forth at

23  18 U.S.C. § 3553(a).  Nonetheless, the court notes that both at the time of his original sentencing

24  and when sentenced on his first violation of the conditions of his supervised release, defendant

25  Arias received below-guideline sentences.  Defendant's violation conduct was egregious as

26  discussed on the record at his dispositional hearing on June 19, 2020.  The mid-guideline sentence

27  of a 11-month term of imprisonment on his latest violation was, after considering the factors set

28  /////

9

1    forth in 18 U.S.C. § 3583(e), most certainly warranted in light of the defendant's history of

2    repeated violations.

3                                    **CONCLUSION**

4            For the reasons explained above, defendant's motion for compassionate release (Doc. No.

5    76) is denied.

6    IT IS SO ORDERED.

7        Dated:    **October 7, 2020**                                                            

8                                                      UNITED STATES DISTRICT JUDGE

10